(Cuyahoga County Common Pleas.)
Rendered November 9, 1900.

THE STATE OF OHIO ex rel. William W. Jackson v. GEORGE P. KURTZ, Treasurer.

---

The statute providing for the creation of a fund for pensioning teachers in the city of Cleveland, by withholding a certain percentage from the salary of teachers, is unconstitutional, because it takes from said teachers property without due process of law, and because it is a law of a general nature, which should not be confined to the city school district of Cleveland.

---

WING, J.

This is a case which will probably be litigated in the higher courts, and it is not one in which the opinion of the trial court can be of any especial value; but, in justice to counsel and myself, I will at once briefly state the reasons for my decision, without taking time to elaborate a formal opinion, since I feel quite sure that my decision would not be changed by further thought.

The statute in question provides for the withholding of money which belongs to a certain class of individuals, and which will belong to others of the class to be affected in the future.

The compensation of every teacher in the described district is due to him or her by the virtue of service performed under a contract authorized by law. Nothing can ever become due to a teacher, so that anything can be withheld, as the language of the statute is, "until full performance of service has been rendered by such teacher, and the amount under the contract between the teacher and the employing authority has been earned. Except for the enforcement of this law, the teacher

would be entitled to the full amount earned.

Under the provisions of this law, the treasurer is compelled to withhold, then, something that belongs to a teacher; and for what purpose? To put it into a fund which at a later time, at least five years later than September, 1900, is to be distributed to persons unknown to the present time—impossible to be known, except as they would belong to a certain class of teachers then employed, who shall have at that time served a certain number of years.

Calculating from the individual standpoint of the complainant in this case, it would be a matter for her grave consideration whether she, by any chance, could participate in the fund raised in part by her enforced contribution; and it would be a question very difficult of solution for her, if the investment were left to be voluntary, as to whether a rational man or woman would indulge in a hazard to the extent that the amount of the contribution would involve. It certainly is a hazard. ·

The only fact that relieves fire insurance from the hazard that attached to common wagers, is the great number of events with respect to which they take chances, and that that great number develops an average of certainties.

It cannot be said that the number of events contemplated by the scheme proposed by the statute in question, is enough to form the basis of any average of certainties. The great preponderance of chances would be against the teacher getting anything. Although in fire insurance we can say that the hazard of a policy holder being ultimately paid from the fund created by the collection of premiums is eliminated by the number of events, we can hardly imagine the propriety of even general laws in this country, which would compel each citizen to insure his property.

The purpose of this law on its face, is to compel each individual affected, to contribute to a scheme of insurance which may serve to protect her against an old age when she might have neither means nor employment.

It is claimed that this will benefit the public indirectly, because it will relieve the teacher from anxiety during the term of her service; and hence she can be the more strictly devoted to the employment of teaching, and can perform better service. That is a question. The teacher might be wondering from time to time, as to whether she could participate in the fund which from month to month her present earnings were being taken from her to create.

She might be disturbed by having in contemplation that if she should marry or die, or change her occupation, she would lose all interest in the fund. So that it is not at all certain that her mind would not be more disturbed than quieted by the contemplation of her chances, and thus a public injury result instead of a public benefit.

If we can regard the effect of this act as producing a public benefit, it is because all teachers are likely to be affected in a favorable way, and the youth of the country hereby have a better chance to obtain good service from the teachers. If that is so, then we are led at once to the theory that because the education of youth is a subject-matter of general interest to every citizen in the state, no matter where he may be situated—whether in a county containing a city of a certain grade or class, or in the remotest township or hamlet—laws pertaining to such a subject, must have uniform operation throughout the state

That it is entirely proper for people to take from their present income certain amounts to guard themselves against want in old age, is true. That pension laws are enacted by the general government for the reward of military service, and that they have a sufficient foundation in our republican form of government and the absence of a standing army and the necessity of a republic to rely upon voluntary service of its citizens whenever the state may be in danger, and that from matters of public policy, there may be sufficient voluntary response by citizens, by way of enlistment in the time of need, that the history of the country should show, in that particular at least, that republics are grateful, has nothing to do with the question that, we have before us, and could not except there was in question some general law of that state, which imposed a tax upon its citizens upon the theory that as a public policy of the state it is proper to tax property of all citizens for the purpose of giving to school teachers rewards for long-continued and meritcrious terms of service —comparing the services of teachers in public schools to that of soldiers in the army.

That the subject-matter of this law is either one of two things seems certain to me. It must be either legislation tending to improve the means of instruction of the youth of the state applied only to the youth of his city district; or it must be for the purpose of benefiting those who may be teachers in this particular district five years from this date, and, if it is for the benefit of such teachers, it is the taking of money from one person in violation of his constitutional rights to keep it. It is taking it from her to give to some others unknown, not to give it back to her again, but to compel her to run the risk of ever getting anything back; and

to the extent you have compelled her to put money in hazard, you have violated her constitutional right or have taken it from her without due process of law.

If this legislation is of the other character, that is, tending to improve the chances of the youth in the state of Ohio to be educated, then it is a law of a general nature and should not be confined to the territorial limits of this district.

The law as has been said is imperfect in its machinery. It is, perhaps, a little difficult to see how this money would be distributed, upon what principle of justice, except in the few instances where it mentions in a mandatory way what this retiring board shall do. There is much left to the retiring board, to the discretion of the retiring board, without compelling them to found their decisions upon any certain state of facts.

There would be two provisions at least, of the constitution violated if this amount of money should be withheld from this plaintiff.

And, without further elaboration, I will enter judgment in this matter of the peremptory writ compelling the payment of this money by the defendant, the treasurer.

Messrs Hogsett, Beacom, Excell, Gage & Carey; Messrs. White, Johnson, McCaslin & Cannon, and Jerome K. Patterson, for Plaintiff.

Messrs. Kline, Carr, Tolles & Goff, for Defendant.